UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cr-23-HSM-SKL |
| | ) | |
| DARIUS JERMAINE BLAKEMORE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT & RECOMMENDATION**

Before the Court is a motion to suppress and memorandum filed by Darius Jermaine Blakemore ("Defendant") seeking to suppress all evidence resulting from a vehicle stop [Docs. 67 & 68].[1] Defendant alleges the stop violated the Fourth Amendment to the United States Constitution because it was not supported by probable cause. Plaintiff United States of America ("the government") filed pre- and post-hearing responses in opposition to the motion [Doc. 85 & 95]. An evidentiary hearing on the motion was held January 20, 2017. After fully considering all of the parties' evidence and argument, I **RECOMMEND** that Defendant's motion to suppress be **DENIED**.

I. **FACTUAL BACKGROUND**

During the evidentiary hearing, the government presented the testimony of Hamilton County Sheriff's Deputy/Canine-Handler Patrol Officer Larry Posey ("Posey") and Red Bank Police Department Narcotics Detective/Drug Enforcement Administration ("DEA") Task Force

---

[1] The motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 73]. The parties were given an opportunity to file post-hearing briefs and only the government elected to do so.

Officer Shane Dockery ("Dockery"). Defendant presented no witnesses. The officers collectively testified to the following pertinent facts.

Posey has made hundreds of stops for seat belt violations over the span of his long career in law enforcement, and he testified about the various ways he could detect a seatbelt violation. Dockery gave similar testimony about his own experience with hundreds of stops for seatbelt violations during his career in law enforcement and the various ways he could determine when a seatbelt was not in use based on the way the shoulder strap and buckle hang from the car frame or "B-pillar."

On occasion, Posey has been called upon by other law enforcement officers to be on stand-by to deploy his canine or to develop probable cause for and initiate a traffic stop of a suspect in an investigation. Posey testified that the narcotics unit of the Sheriff's Department, DEA, and other agencies will occasionally request such stops. Posey also testified that in order to make such a requested stop, he was expected to "find [his] own probable cause to stop the vehicle." Posey testified that he knew not to stop, and would not stop, a vehicle upon request unless he found probable cause for a traffic stop. Dockery confirmed that it is "standard operating procedure" when bringing in a marked police unit to make a traffic stop related to an ongoing investigation that the patrol officer must first develop probable cause for the stop.

Turning to the events at issue, on the clear and sunny morning of March 16, 2016, DEA Task Force Officer Michael Thompson ("Thompson") called Posey, who was on routine patrol in the Bonnie Oaks/Lee Highway area, and advised that the DEA might need Posey's assistance to initiate a traffic stop that day. Posey told Thompson he would remain on standby until needed. Posey continued his patrol and engaged in routine duties in the general area. Later that morning, Thompson again called Posey to confirm availability for a traffic stop. In these calls, Thompson

did not provide to Posey any information about DEA's investigation or provide any grounds for a stop. From past experience making stops for DEA, Posey understood he should stop the vehicle of interest in this case upon request only if he developed probable cause of a traffic violation.

Shortly after the second call, DEA Task Force Officer Dockery, who was part of the DEA surveillance team, announced over the radio to Posey that he was following a certain dark-colored Chevrolet Trailblazer ("the Trailblazer") in an unmarked police vehicle on Lee Highway in Chattanooga, Tennessee.[2] Dockery asked Posey if he could "do a stop" of the Trailblazer. Both Dockery and Posey indicated this meant that Posey should stop the Trailblazer if he developed probable cause of a traffic violation. As Dockery followed behind the Trailblazer for a half mile, straight stretch on Shallowford Road, Dockery caught up to and came directly behind the Trailblazer. Dockery saw through the slightly tinted Trailblazer's window that the front seat passenger was not wearing a seatbelt in violation of Tennessee law. Specifically, Dockery saw the seatbelt straps and buckle hanging from the B-pillar. Dockery relayed that the front seat passenger was not wearing a seatbelt to Posey via the radio.

As Posey approached from behind in his marked patrol car, Dockery, who was then driving directly behind the Trailblazer, passed it on the right. Posey then began to catch up to and pull behind the Trailblazer as the Trailblazer was moving into the turning lane to turn left into the parking lot of a store on Shallowford Road. In a matter of two-to-three seconds as the Trailblazer turned, Posey could see through the slightly tinted windows that the front seat passenger was not wearing a seatbelt. As a result of directly observing this seatbelt violation, Posey immediately activated his blue lights to initiate the traffic stop. Posey explicitly testified that he did not rely on Dockery's communication about a seatbelt violation to make the stop; instead, he only activated

---

[2] The government reported that there is no recording of the radio communications referenced herein.

3
Case 1:16-cr-00023-HSM-SKL   Document 96   Filed 01/27/17   Page 3 of 12   PageID #: 511

his lights when he saw for himself that the front seat passenger was not wearing a seatbelt. It is this observation by Posey that is the main point of contention in the motion to suppress.

There is a soundless dash camera recording taken from Posey's patrol car, which was marked as Exhibit 3. Although the actual recording reportedly lasts from about 30 seconds to a minute prior to the activation of the patrol car blue lights until the stop is completed, only the pertinent portion of the recording entered as Exhibit 3 is considered herein. The patrol car recording starts around 11:47:00 a.m. and reflects that at 11:48:04 the Trailblazer gets into the center turning lane, which is when Posey can see the Trailblazer for the first time. Posey testified that a few seconds later, around 11:48:08, he observed the seatbelt violation. Within seconds, at 11:48:10, Posey activated his blue lights to initiate the stop. The activation of the blue lights results in an "L" appearing on the recording.

The patrol car camera hangs near the ceiling of the patrol car on the windshield to the right of the center of the vehicle. Posey testified that he had a better position or vantage point from the driver's seat to view the seatbelt violation during the turn than the camera had. No witness testified the seatbelt violation can be seen in the recording and the government did not argue it was visible in the recording. At various times during the recording, such as at 11:48:19, the recording reflects that the tinted window did not prevent seeing into and through the Trailblazer.

In his sworn arrest report/affidavit of complaint, Exhibit 1, Posey noted the basis for the stop was a front seat passenger seatbelt violation and that there were DEA agents at the stop. Posey did not include in this report that the DEA had requested him to make a traffic stop. The DEA report of investigation prepared by DEA Special Agent Andrew E. Bergren, Exhibit 2, mentions that Posey was on stand-by to conduct a traffic stop, but does not mention that the basis for the stop was a seatbelt violation.

4

After the Trailblazer came to a stop in the parking lot of the store, Posey approached the driver's side of the vehicle and DEA agents approached the passenger's side of the vehicle. Both Posey and Dockery testified that Defendant, who was the front seat passenger, was not wearing a seatbelt as they approached the stopped vehicle.

The next day, Defendant was charged in a federal criminal complaint with possession with intent to distribute cocaine base and heroin, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm as a convicted felon [Doc. 1]. On March 22, 2016, Defendant was indicted and charged with similar offenses [Doc. 7]. On June 28, 2016, a superseding indictment added charges of conspiring to distribute heroin and distributing heroin resulting in death [Doc. 17].

## II. ANALYSIS

Defendant seeks to suppress the drugs and firearm seized and his statements on the ground that Posey lacked probable cause to stop the Trailblazer. The cornerstone of Defendant's argument is the Fourth Amendment, which provides, "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.[3] Stopping a vehicle and detaining its occupants is a seizure—a non-consensual, investigative detention—under the Fourth Amendment. *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008).

Defendant, as the proponent of the motion to suppress, generally bears the burden of establishing his Fourth Amendment rights were violated, *see Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), but it is the government's burden to demonstrate by a preponderance of the evidence

---

[3] A defendant has the burden of establishing a legitimate expectation of privacy to assert a Fourth Amendment right. *United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001). As a preliminary matter, the government does not contest that Defendant, as a passenger, had a legitimate expectation of privacy with respect to the stop.

5

that the stop was proper, *see United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990). Evidence seized during an unlawful traffic stop must be suppressed. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). If either the initial traffic stop or the scope and duration of the stop is unlawful, then the evidence obtained from that illegality may be excluded, *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). In this case, Defendant contests only the basis for, not the scope or duration of, the stop.

The United States Court of Appeals for the Sixth Circuit "has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *Blair*, 524 F.3d at 748. *See also Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that stopping an automobile is reasonable where there is probable cause to believe a traffic violation has occurred); *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008) (holding that reasonable suspicion standard is sufficient for ongoing traffic violation but not a completed misdemeanor). In the instant matter, both parties agree the Court should apply the stricter probable cause standard to the traffic stop.

In *United States v. Collazo*, the Sixth Circuit recently reiterated: "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. It does not require an actual finding of a violation, rather, a probability or substantial chance of criminal activity is all that is required." 818 F.3d 247, 254 (6th Cir.), *cert. denied*, 137 S. Ct. 169 (2016) (internal quotation marks and citations omitted).[4] "[T]his probable cause

---

[4] The Sixth Circuit also noted "that the dividing line between when probable cause is required for a traffic stop and when reasonable suspicion is sufficient is in need of greater clarity in this circuit." *Collazo*, 818 F.3d at 254. That dividing line or distinction, however, is not germane in this case.

6
Case 1:16-cr-00023-HSM-SKL   Document 96   Filed 01/27/17   Page 6 of 12   PageID #: 514

determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop.*" *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc) (emphasis in original).

Although Defendant was the subject of a DEA investigation, Posey testified that suspected illegal drug activities played no role in his decision that he had a basis to stop the Trailblazer. According to all of the testimony, the only basis for the stop was the seatbelt violation. During the hearing and in its post-hearing brief, the government conceded that it was not relying upon any alternative argument that the officers had reasonable suspicion based on the DEA investigation to support a *Terry*[5] stop of the Trailblazer.

Because the government is proceeding only on the argument that Officer Posey had probable cause to stop the vehicle for a seatbelt violation, the relevant inquiry is whether the facts known to Posey supported a reasonable belief that the Trailblazer's front seat passenger was violating Tennessee's seatbelt law. *See United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010) (holding that "for [a] traffic stop to be permissible under the Fourth Amendment, a police officer must know or reasonably believe that the driver of the car is doing something that represents a violation of law" and "that police officers may not look for after-the-fact justifications for stops that would otherwise be impermissible . . . ."). Tennessee's safety belt ordinance clearly provides that the front seat passenger in a vehicle driven on any highway must be restrained by a safety belt at all times the vehicle is in forward motion. Tenn. Code Ann. § 55-9-603(a)(2) ("[n]o person four (4) years of age or older shall be a passenger in a passenger motor vehicle . . . , unless the person is restrained by a safety belt at all times the vehicle is in forward motion." ). As a result, if Officer Posey knew or reasonably believed that the front seat

---

[5] *Terry v. Ohio*, 392 U.S. 1 (1968).

passenger of the Trailblazer was not wearing a seatbelt when he initiated the stop, the stop was constitutional. *See e.g.*, *United States v. Draper*, 22 F. App'x 413, 414-15 (6th Cir. 2001); *United States v. Clemons*, No. 3:08-CR-102, 2009 WL 1472675, at *7 (E.D. Tenn. May 19, 2009) (observation of seatbelt violation provides probable cause for stop and detention while issuing a traffic citation).

In a straight-forward way, the suppression issue comes down to whether it is credible that Posey observed a seatbelt violation as he claims. A court is given wide latitude in making its credibility determinations. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002). "In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *9 (E.D. Tenn. Jan. 14, 2015) (Lee, MJ) (citing *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005)). I **FIND** that Posey's experience, appearance, demeanor, descriptive account of the day's events, corroborated testimony, and overall impression support finding that he gave credible testimony that he could and did observe that Defendant was not wearing a seatbelt.

Defendant has not contended that he was, in fact, wearing his seatbelt; instead, he contends that Posey (and Dockery) could not possibly have seen whether he was wearing his seatbelt. Defendant made a well-presented—although ultimately unsuccessful—argument that when taking into account the timing of the stop, the recorded events, and the tinted windows, it is allegedly incredible that Posey saw any seatbelt violation. Contrary to Defendant's argument, Posey's testimony about how and when he saw the violation is possible and is not disproved by the timing, recording, or slight tint on the windows. *See United States v. Coker*, No. 3:13-CR-102, 2014 WL 2768869, at *14 (E.D. Tenn. June 18, 2014), *aff'd,* 648 F. App'x 541 (6th Cir. 2016) (Mattice J.) (holding this Court would not supplant its version of events over that

of the officer making the traffic stop based upon its review of a difficult to see patrol car video).

Given Posey's vast experience detecting seatbelt violations, it is entirely plausible that he observed Defendant's violation. Posey credibly explained that he has made hundreds of seatbelt violation stops, has experience in detecting such violations, and had a better vantage point to see the seatbelt violation at issue than the vantage point reflected in the dashboard recording. The recording also supports Posey's testimony that, in spite of the slight tint on the Trailblazer's windows, he could see the seatbelt violation through the windows. Posey's observation is corroborated by Dockery who also testified that he observed the same seatbelt violation. *See United States v. Garrido,* 467 F.3d 971, 979 (6th Cir. 2006) (holding courts may conclude that the "consistency of the two officers' accounts" indicates that their statements are credible); *see also United States v. Simmons,* 174 F. App'x 913, 917 (6th Cir. 2006) (finding officers' testimony credible because it was substantively consistent); *United States v. Craft,* 150 F. App'x 413, 415 (6th Cir. 2005) (finding officers credible because they "testified consistently, one with the other."); *United States v. Hedelsky*, No. 4:15-CR-13-TRM-SKL, 2016 WL 1714224, at *4 (E.D. Tenn. Apr. 6, 2016), *report and recommendation adopted,* No. 4:15-CR-13, 2016 WL 1706147 (E.D. Tenn. Apr. 28, 2016) (same).

In addition, there was no evidence presented that Defendant was actually wearing a seatbelt. Posey may have an incentive to justify his basis for the traffic stop, but there is no evidence that would indicate he has any history of fabricating evidence or would falsify a sworn written report or commit perjury in this case. In short, I **FIND** Posey's unequivocal testimony that he observed a seatbelt violation to be credible even though it was a split-second observation that cannot be verified on the patrol car recording.

While Defendant questions whether any violation of the seatbelt law could actually be

9
Case 1:16-cr-00023-HSM-SKL   Document 96   Filed 01/27/17   Page 9 of 12   PageID #: 517

observed, he provides no authority to support any argument that the stop was improper if the Court finds Posey's testimony about Defendant's failure to comply with the Tennessee safety belt ordinance is credible. Instead, Defendant cries "pretext." Whatever other subjective reasons law enforcement had for making the stop, however, is legally irrelevant. *See, e.g., United States v. Canipe*, 569 F.3d 597, 601 (6th Cir. 2009) (holding that because the officer "possessed probable cause to believe that a traffic violation occurred when he observed [defendant] not wearing a seatbelt, [officer's] motivation for making the stop (suspicion of unlawful possession of a firearm) did not undermine [the constitutionality of the stop]."); *Hughes*, 606 F.3d at 315-16 (rejecting the district court's analysis as to why the officer "*really*" stopped the vehicle); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) (citing *Whren*, 517 U.S. at 812-13 (1996)) ("[A]n officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle."); *Ferguson*, 8 F.3d at 391 (holding that "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful").

By all accounts Posey was looking for any lawful reason to stop the Trailblazer. Defendant unwittingly provided Posey the reason he was looking for and it is well established that "police officers may stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *Blair*, 524 F.3d at 748 (original brackets and citation omitted). Officers will often have unrelated suspicions about a traffic violator, but reviewing courts do not ask whether an officer would have made a traffic stop if not for those unrelated suspicions; they ask only whether "this particular officer in fact had probable cause to believe that a traffic offense had occurred . . . ." *Ferguson*, 8 F.3d at 391. If so, the stop is reasonable. *Id.*

10
Case 1:16-cr-00023-HSM-SKL   Document 96   Filed 01/27/17   Page 10 of 12   PageID #: 518

Accordingly, I **FIND** the government has met its burden to establish probable cause for the stop and I **RECOMMEND** that Defendant's motion to suppress be **DENIED.**

I will briefly address the government's seemingly alternative argument that Posey also had probable cause of a seatbelt violation based on the application of the "collective knowledge" doctrine. The case cited by the government to support this proposition, *United States v. Lyons*, 687 F.3d 754, 765-66 (6th Cir. 2012), is not particularly useful to this analysis. In *Lyons*, the court applied the collective-knowledge doctrine when officers conducting a *Terry* stop had "no independent basis to target" the defendant, but rather were acting solely on another officer's request. *Id.* at 768. The other alleged basis for the stop in *Lyons*, a traffic infraction, was specifically abandoned by the government and the court only addressed the collective-knowledge doctrine in the context of an investigatory stop where the doctrine is routinely applied and accepted.

However, at least one district court in the circuit has held "it is not problematic" for a patrol officer to be instructed to make a traffic stop for a reported traffic violation even if the stopping officer does not directly observe the traffic violation, because probable cause of the traffic violation may be established based on the collective knowledge of the stopping officer and the officer who actually witnessed the traffic infraction. *See United States v. Castro*, No. 1:07CR360, 2008 WL 2017571, at *3 (N.D. Ohio May 7, 2008) (citing *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989) (stating, "probable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest.")).

In this case, it appears Dockery was in no better or worse position to observe the seatbelt violation than Posey. In addition, Posey categorically testified that he did not merely rely on Dockery's reported observation; instead, he waited to initiate the stop until after he personally

11
Case 1:16-cr-00023-HSM-SKL Document 96 Filed 01/27/17 Page 11 of 12 PageID #: 519

observed the seatbelt violation. Given Posey's credible testimony that he directly observed a seatbelt infraction, it is not necessary for this Court to address the government's argument that Posey additionally had probable cause of a seatbelt violation based on the application of the "collective knowledge" doctrine. Likewise, it is not necessary to address Defendant's argument that any "collective knowledge" of the officers concerning the seatbelt violation does not comes into play in light of *Ferguson.*

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[6] that Defendant's motion to suppress [Doc. 67] be **DENIED** in its entirety.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).