UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | Case No. 1:16-cr-23-1 |
| v. | ) | |
| | ) | Judge Mattice |
| DARIUS JERMAINE BLAKEMORE, | ) | Magistrate Judge Lee |
| *Defendant.* | ) | |

## ORDER

On January 27, 2017, United States Magistrate Judge Susan K. Lee filed her Report and Recommendation (Doc. 96) pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59(b)(1). In her Report and Recommendation (hereinafter "R&R"), Magistrate Judge Lee recommended that Defendant's Motion to Suppress (Doc. 67) be denied. On February 10, 2017, Defendant filed timely Objections to the R&R. (Doc. 102).

The Court has now reviewed the entire record relevant to the instant objections, and for the reasons state herein, the Court will **OVERRULE** Defendant's objections, will **ACCEPT and ADOPT** Magistrate Judge Lee's R&R, and will **DENY** Defendant's Motion to Suppress.

I. BACKGROUND

The facts giving rise to Defendant's Motion to Suppress are, for the most part, uncontested. This action stems from the Drug Enforcement Administration's ("DEA") 2016 investigation of Defendant for illicit narcotics activity. On the morning of March 16, 2016, a bright and sunny day in Chattanooga, Tennessee, DEA agents contacted

Hamilton County Sherriff's Deputy/Canine-Handler Patrol Officer Larry Posey (hereinafter "Officer Posey"), to ask if he could be on standby to conduct a traffic stop.[1] After confirming that Defendant was in the passenger seat of a dark-colored Chevrolet Trailblazer ("the Trailblazer"), DEA Task Force Officer Shane Dockery (hereinafter "DEA Officer Dockery")[2] radioed Officer Posey asking him if he could perform a traffic stop of the Trailblazer.

After he asked Officer Posey to perform the traffic stop, DEA Officer Dockery followed the Trailblazer in an unmarked police vehicle. DEA Officer Dockery saw through the Trailblazer's tinted windows that the front seat passenger was not wearing a seatbelt, and he relayed this information to Officer Posey in a second radio communication. (Doc. 107 at 26–27). Officer Posey travelled down a long, straight stretch of Shallowford Road for approximately thirty seconds before he caught up with the Trailblazer. During this time, Officer Posey was several car lengths behind the Trailblazer, and at least one other vehicle (a pickup truck)[3] completely obstructed Officer Posey's view thereof. At approximately 11:48 a.m., however, the Trailblazer pulled into a left turn lane to turn into a Dollar General store. At this time, Officer Posey had an unobstructed view of the Trailblazer, and followed it into the turn lane. About five seconds after the Trailblazer first came into view, as depicted in a video recorded by a camera affixed to Officer Posey's vehicle (hereinafter "the dash cam video"), Officer

---

[1] Officer Posey was contacted twice by a "Detective Thompson" via telephone to ensure that Officer Posey was available to make a stop. (Doc. 107 at 9, 24–25). As will be made clear, *infra*, Officer Posey was later contacted by DEA Officer Dockery via radio with a description of the Trailblazer and a request to make a traffic stop. (*Id.* at 25–26).

[2] DEA Officer Dockery is an employee of the Red Bank Police Department, but is assigned to the DEA as a task force officer. (Doc. 107 at 44–45).

[3] This vehicle was the unmarked police vehicle in which DEA Officer Dockery was travelling. (Doc. 107 at 42).

2

Posey activated his blue lights to initiate the traffic stop. Officer Posey contends that during these five seconds, he saw that the front seat passenger of the Trailblazer was not wearing his seatbelt, which gave him probable cause to stop the vehicle.

The remaining facts are irrelevant for purposes of this Order. Briefly, during the ensuing traffic stop, law enforcement officers found narcotics and weapons in the Trailblazer. Defendant does not argue in his Motion to Suppress that the scope or duration of the stop were impermissible, but rather that Officer Posey lacked probable cause to initiate the traffic stop. (Doc. 68 at 4); (Doc. 107 at 5) ("The basis of our suppression motion is simply that there was not probable cause to initiate the traffic stop, and asking to suppress that evidence."). Defendant claims that the stop was "based upon a direct instruction from DEA agents," and that "Deputy Posey was never in a position to observe [a seatbelt] violation prior to activating his lights to [begin] the stop." (Doc. 68 at 4). The Court referred Defendant's Motion to Suppress to United States Magistrate Judge Susan K. Lee to conduct an evidentiary hearing and to issue a R&R pursuant to 28 U.S.C. § 636(b)(1). (Doc. 73).

On January 20, 2017, Magistrate Judge Lee held an evidentiary hearing at which she heard the testimony of DEA Officer Dockery and Officer Posey. As is relevant to Defendant's Objections, DEA Officer Dockery testified that he observed that the front seat passenger of the Trailblazer was not wearing a seatbelt, and that he relayed this information to Officer Posey. (Doc. 107 at 54–55). Officer Posey testified that he had made hundreds of stops for seatbelt violations in his time as a law enforcement officer, and that he had previously been contacted by other law enforcement officers to be on standby to conduct traffic stops. (*Id.* at 8–9, 19–20). He further testified that he understood that in these situations he must independently find probable cause before

3

initiating a traffic stop. (*Id.* at 20) ("When they call us to initiate a traffic stop for them, we are the – we know that we have to find our own probable cause to stop the vehicle. They usually don't have probable cause for us; we have to find it on our own."). During the brief period in which the Trailblazer was visible to Officer Posey, he stated that he personally observed that the front seat passenger was not wearing his seatbelt. (*Id.*) ("When I got behind him, as he was turning, I got a quick shot into – inside the vehicle, and that's when I saw him not wearing a seatbelt."). It is uncontested that it is impossible to tell from the dash cam video whether said passenger was or was not wearing his seatbelt.

On January 27, 2017, Magistrate Judge Lee issued her R&R. (Doc. 96). Therein, she correctly noted that "[i]n a straight-forward way, the suppression issue comes down to whether it is credible that Posey observed a seatbelt violation as he claims." (*Id.* at 8). On that issue, Magistrate Judge Lee found "that Posey's experience, appearance, demeanor, descriptive account of the day's events, corroborated testimony, and overall impression support finding that he gave credible testimony that he could and did observe that Defendant was not wearing a seatbelt." (*Id.*). Furthermore, the R&R recognized that while Defendant "made a well-presented . . . argument that when taking into account the timing of the stop, the recorded events, and the tinted windows, it is allegedly incredible that Posey saw any seatbelt violation," Officer Posey's "testimony about how and when he saw the violation is possible and is not disproved by the timing, recording, or slight tint on the windows." (*Id.*). Accordingly, Magistrate Judge Lee recommended that because Officer Posey's testimony that he saw a seatbelt violation was credible, Officer Posey had probable cause to initiate the traffic stop, and no Fourth Amendment violation has occurred. (*Id.* at 9–11).

Defendant raises two objections to the R&R. First, he disagrees with Magistrate Judge Lee's credibility determination, and petitions the Court to conduct a *de novo* review thereof. (*Id.* at 6). Second, he argues that in making a probable cause determination, the R&R impermissibly relied on events that took place after Officer Posey initiated the traffic stop. (*Id.* at 7). The United States has filed a response to Defendant's Objections, (Doc. 103), and this matter is now ripe for review.

## II. ANALYSIS

The Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations" to which Defendant has objected. 28 U.S.C. § 636(b)(1). Each objection will be discussed in turn.

### A. Officer Posey's Credibility

Defendant does not contest that if the Court finds Officer Posey's testimony that he observed a seatbelt violation to be credible, then Officer Posey had probable cause to initiate a traffic stop and Defendant's Motion to Suppress should be denied. Defendant's first objection takes umbrage with Magistrate Judge Lee's credibility determination. Specifically, he argues that "[t]he Magistrate Court gave undue weight to the testimony of Officer Posey, and did not fully consider countervailing evidence relating to the basis for the traffic stop." (Doc. 102 at 2). Defendant advances several arguments within this objection, but the upshot is that he believes that it is "somewhat amazing" that Officer Posey spotted a violation of Tennessee's seatbelt law within seconds of the Trailblazer coming into his view, and that "the objective evidence relating to the traffic stop . . . does not support [Officer Posey's] version of the events." (*Id.* at 4).

The Court has reviewed the entire record as is relevant to Defendant's Motion to Suppress, including the transcript of the evidentiary hearing and all exhibits referenced

therein, and agrees with Magistrate Judge Lee's well-reasoned conclusions. Defendant has not petitioned the Court to hold a second evidentiary hearing so that the Court may hear Officer Posey's live testimony before ruling on his objections. While a District Court "may disregard a magistrate's credibility findings without listening to live testimony," *United States v. Davis*, 361 F. App'x 632, 635 (6th Cir. 2010) (citing *United States v. Saltzman*, 992 F.2d 1218 (6th Cir. 1993) (table)), nothing on the record before the Court leads it to believe that Officer Posey's testimony is not credible. Accordingly, the Court will **ACCEPT and ADOPT** the R&R insofar as it finds that Officer Posey gave credible testimony that he observed that Defendant was not wearing a seatbelt before he initiated the subject traffic stop. *See United States v. Raddatz*, 447 U.S. 667, 676 (1980) (The Supreme Court of the United States counsels that "in providing for a 'de novo determination' rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

For the sake of completeness, the Court will address briefly several issues related to credibility that Defendant raises in his first objection. First, Defendant argues that the R&R's factual basis omits "one of the most crucial facts that was elicited during the suppression hearing." (Doc. 102 at 2). This fact, Defendant claims, is that it was the DEA's goal to conduct a traffic stop of any vehicle in which it confirmed that Defendant was a passenger. The contention that this fact was omitted, however, is flatly inaccurate. The R&R specifically noted that the DEA contacted Officer Posey asking if he would be available to make a traffic stop, and that the DEA "did not provide to Posey any information about DEA's investigation or provide any grounds for a stop." (Doc. 96 at

6

Case 1:16-cr-00023-HSM-SKL   Document 113   Filed 03/14/17   Page 6 of 11   PageID #: 657

2–3). Moreover, in the analysis section, the R&R noted that "[b]y all accounts Posey was looking for any lawful reason to stop the Trailblazer." (*Id.* at 10).

Second, and relatedly, Defendant maintains that because law enforcement officials were looking for any justifiable reason to initiate a traffic stop, the court should "examine the testimony of the officers with a critical eye." (Doc. 102 at 2). The Court takes its credibility determinations seriously, and has done exactly what Defendant asks. As stated above, the Court has reviewed the entire record and has found no reason to reject the R&R's credibility determination. While Defendant may find it incredible that Officer Posey spotted a seatbelt violation within four to five seconds of the Trailblazer coming into his view, the Court notes (1) that March 16, 2016 was a bright and sunny day; (2) that Officer Posey has observed hundreds of seatbelt violations in his law enforcement career; and (3) that because DEA Officer Dockery had already informed Officer Posey of his observation that the front seat passenger was not wearing a seatbelt, Officer Posey was able to direct his attention to the passenger's seatbelt immediately upon the Trailblazer coming into view.[4] These facts, as well as those stated in the R&R, (Doc. 96 at 8), lead the Court to credit Officer Posey's testimony.

Third, Defendant attempts to distinguish case law upon which the R&R relies. Specifically, Defendant claims that unlike in *United States v. Coker*, 2014 WL 2768869 (E.D. Tenn. June 18, 2014), the video of the events in this case is clear and the Court should thus "give significant weight to the events contained in Deputy Posey's dashboard video." (Doc. 102 at 5). Defendant, however, has cited no case law supporting

---

[4] Defendant objects to the R&R's reliance on DEA Officer Dockery's testimony that he too saw a seatbelt violation. (Doc. 102 at 5–6). Courts, however, may rely on another officer's corroborating testimony as a factor in assessing credibility. *See, e.g.*, *United States v. Garrido*, 467 F.3d 971, 979 (6th Cir. 2006) ("The district court here could have reasonably concluded that the consistency of the two officers' accounts, as well as the fact that Chelf also mentioned the traffic violation at the state-court hearing held just days after the stop, lent credibility to their version of the events.").

7

this proposition, and the Court has found none. Moreover, Officer Posey testified that because the camera in his patrol car is located to the right of center of the vehicle, he had a better vantage point to view the seatbelt violation than is depicted in the dash cam video. (Doc. 107 at 32). He also testified that "[t]he camera view's showing it backed off a lot." (*Id.*). The Court finds this testimony to be credible, and that the lack of video evidence to confirm Officer Posey's testimony that he observed a seatbelt violation does not override the Court's above-discussed credibility determination.

Finally, Defendant believes that an "inconsistency" between the officers' testimony and official reports should raise the Court's suspicion. Specifically, he argues that while Officer Posey testified that he was contacted by the DEA to conduct a traffic stop, his Affidavit of Complaint made no mention of any DEA communication and "simply states that [he] made a traffic stop for a seatbelt violation." (Doc. 102 at 4). This omission from Officer Posey's official report is legally insignificant, as it is well-established that as long as an officer has probable cause to initiate a traffic stop, his subjective intentions are irrelevant. *See, e.g.*, *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) ("When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant. As we previously have held, 'police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop.'") (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995), abrogated on other grounds by *Ohio v. Robinette*, 519 U.S. 33 (1996)).

Because the Court finds that Officer Posey's testimony was credible, and because his first-hand observation of a seatbelt violation gave him probable cause to initiate a traffic stop, no Fourth Amendment violation has occurred, and Defendant's first

8

objection will be **OVERRULED**. *United States v. Draper*, 22 F. App'x 413, 415 (6th Cir. 2001) ("It is therefore obvious that if Officer Poteet witnessed the violation as he claims, he had probable cause to make the initial stop. However, whether or not the officer actually witnessed a violation, and therefore had that probable cause, is a question of credibility best determined by the district court, in the absence of clear error.").

### B. Events that Occurred After Officer Posey Initiated the Traffic Stop

In his second objection, Defendant argues that the R&R "impermissibly relied on evidence relating to the events that occurred after the traffic stop was initiated in making a probable cause determination." (Doc. 102 at 7). Defendant is correct that the Court's probable cause analysis must be based on what the officer knew at the time he initiated the stop. *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) ("We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he made the stop*. Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop.") (emphasis in original). Defendant's objection falls flat, however, because the Court does not read the R&R as relying on post-stop events to justify its finding that Officer Posey's testimony was credible or to reach its ruling on probable cause. Indeed, Defendant's only specific citation points to the facts section of the R&R.[5] (Doc. 102 at 7) (citing (Doc 96 at 5)). A review of Magistrate Judge Lee's analysis clearly shows that she did not rely on post-stop facts to

---

[5] This factual statement reads, in its entirety, "[a]fter the Trailblazer came to a stop in the parking lot of the store, Posey approached the driver's side of the vehicle and DEA agents approached the passenger's side of the vehicle. Both Posey and Dockery testified that Defendant, who was the front seat passenger, was not wearing a seatbelt as they approached the stopped vehicle." (Doc. 96 at 5). At the January 20, 2017 suppression hearing, the Parties and the Court debated whether the Court may use this information to assess the credibility of Officer Posey's testimony. (Doc. 107 at 71). While it appears to be an open question in the Sixth Circuit whether a court may use post-stop facts to assess an officer's credibility, the Court need not discuss the issue any further, as it is clear that the R&R establishes independent grounds for its ultimate credibility determination. (Doc. 96 at 7–9).

9

establish probable cause, but rather on Officer Posey's testimony that he observed a seatbelt violation before initiating the traffic stop. (Doc. 96 at 7–8) ("Because the government is proceeding only on the argument that Officer Posey had probable cause to stop the vehicle for a seatbelt violation, the relevant inquiry is whether the facts known to Posey supported a reasonable belief that the Trailblazer's front seat passenger was violating Tennessee's seatbelt law. . . As a result, if Officer Posey knew or reasonably believed that the front seat passenger of the Trailblazer was not wearing a seatbelt *when he initiated the stop*, the stop was constitutional.") (emphasis added).[6]

Defendant also takes offense to Magistrate Judge Lee's statements at the suppression hearing and in the R&R that Defendant did not produce any evidence that he was actually wearing a seatbelt. (Doc. 102 at 7–8). He argues that this was impermissibly taken into consideration in the R&R's finding that Officer Posey had probable cause to initiate the traffic stop. (*Id.*). First, the Court sees nothing untoward in the R&R's brief commentary on the lack of evidence establishing that Defendant was, in fact, wearing a seatbelt before the traffic stop was initiated. Had any such evidence been presented, that certainly would cut against finding that Officer Posey's testimony was credible. Second, and more importantly, even putting aside any consideration of Defendant's failure to produce evidence that he was wearing a seatbelt, the Court finds that Officer Posey's credible testimony that he personally observed a seatbelt violation

---

[6] (*See also* Doc. 96 at 8–9) ("Contrary to Defendant's argument, Posey's testimony about how and when he saw the violation is possible and is not disproved by the timing, recording, or slight tint on the windows . . . Given Posey's vast experience detecting seatbelt violations, it is entirely plausible that he observed Defendant's violation. Posey credibly explained that he has made hundreds of seatbelt violation stops, has experience in detecting such violations, and had a better vantage point to see the seatbelt violation at issue than the vantage point reflected in the dashboard recording. The recording also supports Posey's testimony that, in spite of the slight tint on the Trailblazer's windows, he could see the seatbelt violation through the windows. Posey's observation is corroborated by Dockery who also testified that he observed the same seatbelt violation.").

10

before initiating the traffic stop establishes probable cause. Accordingly, Defendant's final objection will be **OVERRULED**.[7]

### III. CONCLUSION

For the reasons stated herein, Defendant's Objections (Doc. 102) are hereby **OVERRULED**, Magistrate Judge Lee's Report and Recommendation (Doc. 96) is hereby **ACCEPTED and ADOPTED**, and Defendant's Motion to Suppress (Doc. 67) is hereby **DENIED**.

**SO ORDERED** this 14th day of March, 2017.

                                                */s/ Harry S. Mattice, Jr.*
                                                HARRY S. MATTICE, JR.
                                                UNITED STATES DISTRICT JUDGE

---

[7] Because it finds that Officer Posey had probable cause to initiate the traffic stop based on his personal observation of a seatbelt violation, the Court will not address the United States' alternative argument that Officer Posey had probable cause to initiate the traffic stop based on the "collective knowledge" doctrine. *See United States v. Lyons*, 687 F.3d 754, 764–66 (6th Cir. 2012).